# EXHIBIT G

Affidavit of Kenneth R. Wallentine

State of Utah            )
                         ) ss.
County of Salt Lake      )

Ken Wallentine being first duly sworn, deposes and says:

1. I am a law enforcement officer in the State of Utah. I became certified as a law enforcement officer in the State of Utah in 1982. Until April 1, 2014, I was employed with the Utah Attorney General, where I served as the Chief of Law Enforcement. I retired from that position in 2014 and currently serve as a reserve Special Agent. I remain certified as a law enforcement officer in Utah. I am currently the Vice-President and Senior Legal Advisor for Lexipol and am in practice as a private consultant. I was formerly employed as a Bureau Chief at the Utah Department of Public Safety, Peace Officer Standards and Training Division, where I supervised investigations into allegations of improper and excessive force, officer integrity, and criminal acts alleged to have been committed by law enforcement officers and supervised in-service training administration and certification for all peace officers in the State of Utah.

2. My duties included direct supervision and command of various investigative units and agents throughout the State of Utah, supervising law enforcement officers, forensic specialists, and technicians. I commanded the State of Utah Officer-Involved Fatality Investigation Team. I am a member of the Board of Review of the Utah Technical Assistance Program, consulting in cold case homicide and complex violent person crimes investigations.

3. I was formerly responsible for providing delivery of the Basic Training Curriculum related to all legal subjects, as well as certain tactical subjects, at the Utah Law Enforcement Academy. I am the author of the police academy curriculum currently in use for several subjects, including, but not limited to, use of force, reasonable force, use of force and police service dog teams, search and seizure, search and seizure for police service dog teams, and use of force/firearms instructor liability. I am a certified POST Firearms Instructor, often serving as the lead instructor for POST Firearms courses. I am certified by the Force Science Research Center as a Force Science Analyst ®. I am a certified TASER® Instructor. I am a certified Excited Delirium and Sudden Death Investigation Instructor. I was certified by the Los Angeles Police Department in Officer-Involved Shooting Investigation. In 2011, I was certified by the Institute for the Prevention of Sudden In-Custody Death as an instructor in restraint systems.

4. I consult and provide expert witness opinions on police procedures, and use of force issues. I perform in-custody death investigations and officer-involved shooting death investigations for agencies which may lack the requisite expertise. I am a consultant to the Utah Risk Management Mutual Association, the state's largest insurer of public safety agencies, on matters of officer conduct and discipline, hiring and screening practices, use of force, and police pursuit policies. I am the co-founder of, and legal advisor to, a best practices advisory group that developed comprehensive model policies and best practices under the authority of the Utah Chiefs of Police Association, the Utah Sheriffs' Association and various state law enforcement agencies. I am the author of a number of model policies for law enforcement agencies, and have provided policy drafting and policy

review services for several agencies, including policy drafting responsibility for large law enforcement agencies. I have served as a contract consultant to the United States Department of Justice, assigned to provide technical assistance and management consulting to various public safety entities in the United States.

5. I participate and serve in a number of community and professional capacities. Professional activities pertinent to law enforcement include serving as a Past-President of the Utah Peace Officers Association, former Board Member of the Utah SWAT Association, member of the International Association of Law Enforcement Educators and Trainers Association, member of the International Association of Chiefs of Police and the Utah Chiefs of Police Association, member of the National Tactical Officers Association, member of the International Association of Law Enforcement Firearms Instructors, member of the International Association of Directors of Law Enforcement Standards and Training, member of the International Law Enforcement Educators and Trainers Association, member of the K9 Section of the Utah Peace Officers Association, member of the United States Police Canine Association, past member of the board of directors of the NAACP, Salt Lake City branch, and board member and immediate past-Chairman of the Utah Law Enforcement Legislative Committee. I formerly served as a gubernatorial appointee to the Council on Peace Officer Standards and Training. I am a former member of the Scientific Working Group on Dog and Orthogonal Detector Guidelines, a national scientific best practices organization sponsored by the Federal Bureau of Investigation, the Department of Homeland Security, and the Transportation Security Administration, with support coordinated by the International Forensic Research Institute at Florida

International University. I have been a presenter at a variety of professional conferences and seminars, including presenting on use of force training at the annual convention of the International Association of Chiefs of Police and the International Conference of the Institute for the Prevention of Sudden In-Custody Death.

6. I am Vice-President and Senior Legal Advisor for Lexipol, Inc., the nation's largest provider of policy formulation and revision for public safety agencies and policy-based training, responsible for reviewing and editing the work of legal staff in creation of policy manuals for law enforcement agencies. In that capacity, I have assisted in the drafting and review of use of force policies in current use by more than 2,000 police agencies and correctional facilities in the United States.

7. I have previously published a number of other professional articles, many of which have been subjected to peer review. My most recent book, *The K9 Officer's Legal Handbook*, 2nd ed., was published by Lexis/Nexis Matthew Bender in February 2014. It includes an extensive discussion of use of force by police officers. Another book, *Street Legal: A Guide to Pre-trial Criminal Procedure for Police, Prosecutors, and Defenders*, was published in 2007 by the American Bar Association Publishing Division. It is a treatise on public safety and criminal procedure, and includes multiple chapters on search and seizure and use of force by police officers. My other published works, limited to the past ten years, include: *Electronic Restraints: Do They Shock the Conscience?*, The Sheriff (in editing); *Legal Risks of Failing to Care for Children of Arrested Persons*, Police Chief, V. 81, No. 10 (2014); *A Rational Foundation for Use of Force Policy, Training and Assessment*, 2014 (2) AELE Mo. L. J. 101; *Post Incident Video Review*, Police Chief, V.

68, No. 12 (2011); *Cell Site Location Evidence: A New Frontier in Cyber-Investigation*, 2011 (2) AELE Mo. L. J. 501, *Prospects, Pitfalls and Pains of Social Media and Public Safety*, The Municipal Lawyer, September 2010; *Police Department May Read Text Messages Sent on Agency-issued Pagers: City of Ontario, California v. Quon*, Police Chief, V. 57, No. 8 (2010); *Collection of DNA Upon Arrest: Expanding Investigative Frontiers*, Police Chief, V. 57, No. 1 (2010); *Targeting TASER: The New TASER Aim Points*, Law Officer, January 2010; *The Risky Continuum: Abandoning the Use of Force Continuum to Enhance Risk Management*, The Municipal Lawyer, July 2009; *Explosive Detector Dog Legal Issues*, K9 Cop, February 2009; *Does Police Service Dog Deployment Equal Deadly Force?*, K9 Cop, April 2009; *Human Scent Line-up Evidence*, Police K9 Magazine, August 2009; *Acknowledging Gender in Fitness Standards for Police: An Invitation to Liability?*, The Municipal Lawyer, January 2008; *K9 Court Testimony*, Police K9, December 2006; *United States Supreme Court Review for Corrections Managers*, Corrections Managers Report, October 2006; *Criminal Procedure: The Street Cop's Guide* (Aspen Press 2005); *Conduct Unbecoming an Officer*, The Municipal Lawyer, January 2005; *Limits on Off-Duty Police Employment*, The Municipal Lawyer, Spring 2004. I am the author of a reference book currently in use in the Utah Law Enforcement Academy, as well as other police academies throughout the United States, titled *Criminal Procedure: The Street Cop's Guide* (Aspen Press 2005). This book discusses detention and arrest of persons, use of force, and search and seizure of persons and property, among other subjects.

*Brunette v. City of Burlington, et al.*
*Affidavit of Kenneth R. Wallentine*    5

8. A reasonable and well-trained officer would immediately prepare to use defensive deadly force in the face of an assailant charging and menacing with a spade or shovel. Officers are commonly taught at the police academy basic training programs to draw a handgun and prepare to fire when an assailant is threatening use of a blunt weapon or edged weapon within 30 feet. The majority of such instruction courses include a scenario known as the Tueller Drill. In this scenario, an officer-in-training is presented with a role-playing suspect poised 21 feet from the officer and holding a knife.

9. Officers are presented with research initially conducted at the Salt Lake City Police Department in 1984 and published by Dennis Tueller. I participated in some of the early work and have collaborated and personally demonstrated and taught the derivative principles with Dennis Tueller on many occasions over the past thirty years. This research shows that an assailant armed with a short-handle edged weapon standing 21 feet from an officer is able to stab and/or slice the officer with the edged weapon before the officer is able to draw and fire his or her handgun more than 50% of the time and that even those officers who are able to fire are still very likely to be stabbed or sliced. Consequently, officers are repetitively taught that they should draw their weapons and be prepared to defend themselves from an edged or blunt impact weapon well before an assailant closes to a 21-foot distance. Officers are taught to prepare to imminently fire when an assailant enters a 30-foot distance.

10. The 21-foot experiment has been applied to assailants with longer-handled edged weapons, such as samurai swords and spears, and longer blunt impact weapons, such as billy clubs, baseball bats, tire irons, etc. I have personally conducted experiments involved

*Brunette v. City of Burlington, et al.*
*Affidavit of Kenneth R. Wallentine*          6

long-handled improvised weapons. Others have observed, and I have personally confirmed, that an assailant with a longer weapon is able to significantly extend the threat zone due to the ability to lunge with the longer weapon and the ability to throw the longer weapon. Recognizing this increased zone in which a longer-handled edged weapon, blunt impact weapon or longer tool is used as an improvised weapon (such as a shovel), officers are taught to that they may well need to draw and prepare to imminently fire when an assailant closes to a distance even greater than 30 feet, considering the nature and character of the weapon.

11. A shovel or spade is the type of improvised weapon that presents a substantial risk of death or serious bodily injury at an extended distance. The shovel blade may be used to slash and the corner of the blade may penetrate skin, muscle and bone, causing a fatal injury. The shaft of a shovel handle and the flat steel blade may also be used as an impact weapon. I am familiar with cases of homicide committed by blows from a shovel. I am also familiar with a case of an officer who suffered numerous broken bones from an attack by an assailant striking with a shovel.

12. I have reviewed the investigative report and the witness statements in this matter. I have had innumerable discussions with other law enforcement trainers and with officers involved in deadly shootings over many years concerning how close is too close for a person with an edged or blunt weapon before the officer should fire in defense of life. This question is obviously not susceptible to a universal answer. The 21-foot principle stands for the proposition that an officer with a holstered weapon is highly likely to be seriously injured by a closing assailant at any point less than 21 feet. The training

associated with that proposition prescribes that an officer draw his or her weapon and prepare to fire before an assailant moves within 30 feet of the officer. As Corporal Thibault can now personally attest, defensive rounds do not always—or even often—stop a deadly attack immediately. I have no doubt that Officer Thibault and Corporal Navari held off firing long past the point that a reasonable and well-trained police officer should have fired in defense of life.

If called to testify at trial in this matter, I would testify consistently with my statements herein.

Further Affiant sayeth not.

*[signature]*

SUBSCRIBED AND SWORN to before me this 5th day of June, 2015.

Notary Public *Samantha Rupp*

My commission expires: 11·17·2015



SAMANTHA RUPP
Notary Public
State of Utah
Comm. No. 649831
My Comm. Expires Nov 17, 2015

*Brunette v. City of Burlington, et al.*
*Affidavit of Kenneth R. Wallentine*        8