U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 JAN -2 PM 3: 41

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

BARBARA BRUNETTE and )
ESTATE OF WAYNE BRUNETTE, )
)
Plaintiffs, )
)
v. ) Case No. 2:15-cv-00061
)
CITY OF BURLINGTON, VERMONT, )
CHIEF MICHAEL SCHIRLING, )
CORPORAL ETHAN THIBAULT, )
and CORPORAL BRENT NAVARI in their )
individual capacities, )
)
Defendants. )

**AMENDED OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION, DENYING PLAINTIFFS' MOTION FOR CERTIFICATION PERMITTING INTERLOCUTORY APPEAL, DENYING DEFENDANTS' MOTION FOR RECONSIDERATION, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**
(Docs. 126 & 127)

This case arises out of an incident on November 6, 2013, during which two Burlington Police Department ("BPD") officers, Corporal Ethan Thibault and Corporal Brent Navari, responded to the residence of Wayne Brunette and his family based on a report that Wayne Brunette was experiencing a mental health episode. After Wayne Brunette approached Corporal Navari with a shovel, Corporal Thibault shot him four times, causing his death. Plaintiff Barbara Brunette, Wayne Brunette's wife and surviving heir, brings this lawsuit individually and on behalf of the Estate of Wayne Brunette (collectively, "Plaintiffs") asserting claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-34, state law claims of assault, battery, negligence, intentional infliction of emotional distress, and damages

under Vermont's wrongful death and survival statutes, 14 V.S.A. §§ 1451-55, 1491-92, respectively.

The court's August 30, 2018 Opinion and Order (the "8/30/18 Decision") granted partial summary judgment in favor of Defendants City of Burlington, Vermont (the "City"), former BPD Chief Michael Schirling, Corporal Thibault, and Corporal Navari (collectively, "Defendants"). The court granted summary judgment with regard to the following claims:

1. Use of deadly force in violation of 42 U.S.C. § 1983 (Count I) against all Defendants;

2. Use of deadly force in violation of 42 U.S.C. § 1983 (Count II) against all Defendants;

3. Municipal liability under 42 U.S.C. § 1983 (Count III) against the City;

4. Assault and battery (Count V) against all Defendants;

5. Negligence (Count VI) against Corporal Thibault, Corporal Navari, and the City;

6. Intentional infliction of emotional harm (Count VIII) as to all Defendants.

The court denied summary judgment with regard to the following claims:

1. Supervisory liability under 42 U.S.C. § 1983 (Count III) against former Chief Schirling;

2. Violation of Title II of the ADA (Count IV) against the City;

3. Negligence (Count VI) against former Chief Schirling;

4. Wrongful death and survival action (Count IX) against former Chief Schirling.

Pending before the court are (1) Plaintiffs' motion to reconsider the 8/30/18 Decision dismissing Count I of Plaintiffs' First Amended Complaint on grounds of qualified immunity, or, in the alternative, to certify the grant of qualified immunity as an issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (Doc. 126) and (2) Defendants' supplemental motion for summary judgment or, in the alternative, motion to

2

reconsider the court's 8/30/18 Decision denying qualified immunity for former Chief Schirling (Doc. 127).

Plaintiffs are represented by Richard R. Goldsborough, Esq., Steven A. Adler, Esq., and Jennifer E. Agnew, Esq. Tristram J. Coffin, Esq., and Jennifer E. McDonald, Esq. represent Defendants.

## I. The Parties' Cross Motions for Reconsideration.

### A. Standard for Reconsideration.

The standard for reconsideration in the Second Circuit is an exacting one. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* In order to obtain relief, a party must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citation omitted).

### B. Whether to Grant Defendants' Motion to Reconsider the Denial of Qualified Immunity for Former Chief Schirling.

On September 29, 2017, Defendants moved for summary judgment, arguing that former Chief Schirling was entitled to judgment as a matter of law with regard to Plaintiffs' Section 1983 claim because he lacked the requisite personal involvement in the incident. Defendants did not assert qualified immunity with regard to Plaintiffs' supervisory liability claim under Section 1983. In the 8/30/18 Decision, the court denied without prejudice Defendants' motion for summary judgment with regard to Plaintiffs' Section 1983 claim against former Chief Schirling.[1] Defendants also argued that

---

[1] The court observed that "[b]ecause Defendants have not argued that former Chief Schirling is entitled to qualified immunity on Plaintiffs' supervisory liability claim, . . . the court cannot determine, based on the record before it, whether 'reasonable officials could disagree' as to

3

summary judgment should be granted with regard to Plaintiffs' claim of negligence against former Chief Schirling. Although Defendants raised the defense of qualified immunity with regard to the negligence claim in their September 29, 2017 motion, the court declined to address it because it was not adequately briefed.[2]

Defendants now ask the court to reconsider its 8/30/18 Decision "denying without prejudice qualified immunity and summary judgment for former Chief Schirling." (Doc. 127 at 1) (emphasis omitted). The court did not make any determination as to whether former Chief Schirling was entitled to qualified immunity in its 8/30/18 Decision because the Defendants failed to argue or adequately brief the issue with regard to Plaintiffs' Section 1983 claim and Plaintiffs' negligence claim. Defendants' failure to raise this defense does not preclude them from filing a supplemental motion for summary judgment, and they have done so. However, they point to nothing in the previous briefing that the court overlooked or failed to consider, no intervening and controlling development in the law, or any manifest injustice that would result if reconsideration was not granted. Defendants' motion for reconsideration is therefore DENIED.

### C. Whether to Grant Plaintiffs' Motion for Reconsideration of the Court's 8/30/18 Decision Dismissing Count I of Plaintiffs' First Amended Complaint.

Plaintiffs ask the court to reconsider its factual conclusion that the threat of serious bodily injury or death to Corporal Navari was both imminent and substantial at the time that Corporal Thibault shot Wayne Brunette. In its 8/30/18 Decision, the court stated that "[t]here is no controlling precedent rendering it constitutionally unreasonable to shoot an individual physically threatening a fellow officer with a deadly weapon where the threat of serious bodily injury or death is both imminent and substantial." *Brunette*, 2018 WL

---

whether former Chief Schirling's supervision of Corporal Thibault was deliberately or grossly negligent 'in light of clearly established law.'" *Brunette v. City of Burlington*, 2018 WL 4146598, at *31 (D. Vt. Aug. 30, 2018).

[2] Defendants raised this argument in a single sentence, stating that "[t]here is also no allegation that Chief Schirling acted in violation of a clearly established statutory or constitutional right." (Doc. 95 at 44.)

4146598, at *27. While there are some disputed facts regarding the incident, neither party disputes that, at the time of the shooting, Wayne Brunette was armed with a weapon capable of inflicting serious bodily injury or death and he was using it aggressively, at times in close proximity to Corporal Navari.

Plaintiffs argue that because there is clearly established precedent that would have put Corporal Thibault on notice that he could not "shoot to kill unless he ha[d] an objectively reasonable belief that his life or the life or others [was] in danger[,]" his claim of qualified immunity should be denied. (Doc. 126 at 7.) The Supreme Court, however, has repeatedly held that clearly established precedent cannot be defined with a "high level of generality." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1776 (2015) ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from [unconstitutional conduct]."). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). The post-incident district court cases cited by Plaintiffs, *Bah v. City of New York*, 319 F. Supp. 3d 698 (S.D.N.Y. 2018) and *Gibbs v. City of Bridgeport*, 2018 WL 4119588 (D. Conn. Aug. 29, 2018), do not provide the requisite notice.[3]

Plaintiffs point out that the Second Circuit in *O'Bert ex rel. Estate of O'Bert v. Vargo* held that "[i]t is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 331 F.3d 29, 36 (2d Cir. 2003). Here, however, it is undisputed that Wayne Brunette was armed with an object capable of inflicting serious bodily injury or deadly force. It is also undisputed that he was using that weapon aggressively. Although Plaintiffs question

---

[3] *See Pabon v. Wright*, 459 F.3d 241, 255 (2d Cir. 2006) ("When neither the Supreme Court nor [the Second Circuit] has recognized a right, the law of [other] circuits and the holdings of district courts cannot act to render that right clearly established within the Second Circuit.").

5

whether and when the risk of injury was imminent, they do not argue it was insubstantial. The facts of *O'Bert* are inapposite.[4]

Because Plaintiffs have not identified controlling precedent that put Corporal Thibault on notice that his conduct was unlawful or facts that would alert any law enforcement officer who was not "plainly incompetent" that his use of force was excessive, the court DENIES Plaintiffs' motion to reconsider the 8/30/18 Decision dismissing Count I of Plaintiffs' First Amended Complaint on grounds of qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citing *Malley v. Briggs*, 475 U.S. 335, 335 (1986)).

## II. Plaintiffs' Motion to Certify the Court's 8/30/18 Decision for Interlocutory Appeal.

"In general, an order denying summary judgment or granting partial summary judgment cannot by itself form the basis of an appeal because it is nonfinal." *LaTrieste Rest. & Cabaret, Inc. v. Vill. of Port Chester*, 96 F.3d 598, 599 (2d Cir. 1996). Nevertheless, a district court may certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) when it is "of the opinion that [the relevant] order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). "When a ruling satisfies these criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)).

---

[4] In *O'Bert*, the officers entered a small trailer to apprehend a man who was observed beating a woman. They believed the suspect was unarmed. As one officer moved towards the suspect in an attempt to grab him, the suspect made a sudden move forward, and the other officer shot him in the chest. The court found that "[o]n plaintiff's version of the facts, in which [the officer] shot to kill O'Bert while knowing that O'Bert was unarmed, it is obvious that no reasonable officer would have believed that the use of deadly force was necessary." *Id.* at 40.

The Second Circuit has cautioned that Section 1292(b) provides a "rare exception to the final judgment rule that generally prohibits piecemeal appeals" and "is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996). As a result, "only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (internal quotation marks and alteration omitted); *see also Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992) (stating that district courts should "exercise great care in making a [Section] 1292(b) certification"). Although "[a] denial of summary judgment based on qualified immunity may be appealable because the very thing from which the defendant is immune—a trial—will, absent review, occur and cannot be remedied by a later appeal[,] . . . [a] grant of summary judgment based on qualified immunity does not lead to any loss of right that cannot be remedied on appeal." *LaTrieste Rest. & Cabaret, Inc.*, 96 F.3d at 599.

Plaintiffs argue that there are "substantial grounds for difference of opinion" as to controlling law, pointing to two recent district court decisions, *Bah*, 319 F. Supp. 3d 698 and *Gibbs*, 2018 WL 4119588, in which Plaintiffs assert the courts have "come down differently" than this court on the relevant issues regarding qualified immunity. (Doc. 126 at 9.) In the two cases cited by Plaintiffs, both courts concluded that qualified immunity should be denied on at least one of the claims asserted. In *Bah*, a jury found that "the final shot to the head that killed Bah was fired at close range while Bah was lying wounded on the ground after being previously shot multiple times by the officers." 319 F. Supp. 3d at 712. The court held those facts presented an "obvious case" that violated clearly established law because at the time the shot was fired, Bah "ceased posing a threat." *Id.* at 710-11. In *Gibbs*, the court found that an officer was not entitled to qualified immunity where the officer shot a victim who had dropped his weapon and was fleeing on foot. 2018 WL 4119588, at *10. The court held that "[o]n plaintiff's version of the facts, no reasonable officer would have believed the use of deadly force to

7

be necessary." *Id.* Those two cases are distinguishable from this case because here there is no dispute that in the moments immediately preceding the shooting, Wayne Brunette was aggressively wielding a weapon that could inflict serious bodily injury or death. The 8/30/18 Decision did not involve a novel legal question, but instead applied standards articulated by the Supreme Court and the Second Circuit to the facts of the case. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 532 (S.D.N.Y. 2014) (holding that "questions concerning the application of law to facts" are "generally not suitable for certification under §1292(b)").

If certification is denied, Plaintiffs may litigate their remaining claims to conclusion and will not thereby lose their right to appeal the 8/30/18 Decision. Because the court's 8/30/18 Decision does not involve "a controlling question of law as to which there is substantial ground for difference of opinion[,]" and because an immediate appeal would not "materially advance the ultimate termination of the litigation," Plaintiffs' motion for certification of an interlocutory appeal is DENIED. 28 U.S.C. § 1292(b).

### III. Defendants' Supplemental Motion for Summary Judgment.

Defendants move for partial summary judgment with regard to Plaintiffs' supervisory liability claim under 42 U.S.C. § 1983 against former Chief Schirling (Count III) and Plaintiffs' negligence claim against former Chief Schirling (Count VI).

#### A. The Undisputed Facts.

Defendant Michael Schirling served as the BPD Chief of Police from February 2008 through June 2015. Prior to February 2008, he served as the Deputy Chief, at which time he was directly responsible for preparing annual use of force reports. He had no personal involvement with the call on November 6, 2013 at 85 Randy Lane until the shots fired report was received by BPD. At that time, former Chief Schirling and other officers responded immediately to the scene.

When the incident took place, BPD had a Department Directive Policy entitled "DD05 Response to Resistance/Use of Force" (the "Directive"), which states in relevant part:

8

> Officers are agents of the state authorized to use various degrees of force to effect arrests or ensure the public safety. Officers employ objectively reasonable force necessary to accomplish a legal purpose. Officers should use only the force that is necessary and appropriate for compliance to control of a suspect and only until compliance or control has been achieved.

(Doc. 127-1 at 2.) The Directive outlines the process by which officers must report all uses of force beyond that of persuasion and compliant handcuffing, stating:

> A report/database entry is required whenever an Officer responds to resistant/uses of force beyond that of persuasion; meets physical resistance during a detention or arrest or takes any action that may reasonably result in injury to another person. Incidents requiring the completion of a Response to Resistance Report include, but are not limited to: discharge of a firearm other than in training, use of a baton or specialty impact munitions, use of defensive agent [such as pepper spray], use of electronic control device, use of any improvised weapons or techniques, any strike with a blunt object, any punch, kick or other strike; dog bite(s), intentional ramming with a vehicle; or any type of force resulting in actual or alleged injury or death.

*Id.* The Deputy Chief of Operations reviews individual use of force reports and conducts an annual review of all use of force reports. All officers are reviewed every four months by a supervising sergeant or lieutenant, at which time performance issues such as unauthorized or non-compliant use of force are identified.

As Chief of Police, former Chief Schirling was made aware of a use of force incident on the same day that it occurred if it concerned an unusual circumstance, an officer or subject was injured, a citizen filed a complaint, multiple officers were involved, it occurred in public, it resulted in media inquiry, or a high or unusual level of force was deployed.[5]

The BPD Administrative Deputy Chief is responsible for conducting reviews of use of force reports, as well as completing an annual report on the use of force to be

---

[5] For example, former Chief Schirling was involved in the internal investigation of the citizen complaint concerning Corporal Thibault's June 25, 2009 use of force in which he used pepper spray to effect an arrest. Former Chief Schirling reviewed the investigation and agreed with the determination that Corporal Thibault's use of force was authorized and in compliance with BPD's use of force policy.

9

submitted to the Chief of Police. Prior to 2008, when former Chief Schirling served as Deputy Chief of Administrative Services, he prepared the annual report on use of force and tracked all citizen complaints including those involving use of force. Former Chief Schirling is not aware of any citizen complaint concerning Corporal Thibault's use of force for the time period in which he served as Deputy Chief.

During former Chief Schirling's tenure as Chief of Police, BPD officers responded to approximately 40,000 incidents per year involving at least 150,000 individual citizen contacts. On average, BPD received fifty citizen complaints each year. Former Chief Schirling participated in meetings with Deputy Chiefs almost every day, and these meetings often included discussions of officers' use of force. He also participated in monthly meetings with all supervisors to discuss operational issues in which concerns about particular officers' use of force practices could be raised.

All of Corporal Thibault's use of force reports were checked "approved." Former Chief Schirling believes that Corporal Thibault prepared use of force reports for all encounters that went beyond persuasion and compliant hand-cuffing.

### B. The Disputed Facts.

Defendants contend that during former Chief Schirling's tenure as Chief of Police, BPD was "very cognizant of oversight of officer conduct, including use of force." (Doc. 127-1 at 1.) Plaintiffs dispute this claim, citing former Chief Schirling's deposition testimony. In response to questions concerning whether Corporal Thibault had "a good, clean record," whether Corporal Thibault had been "disciplined, counseled, or coached on anything," and whether there was anything in Corporal Thibault's record that showed "unsatisfactory police work," former Chief Schirling stated that he was unable to recall this information.

The parties dispute the protocols that are followed by BPD in relation to use of force reports. Defendants contend that every use of force report is reviewed by a supervisor. If the content of the report is inadequate to determine whether the encounter complied with BPD's use of force policy, the report is returned to the officer to provide additional detail. Defendants state that the reviewing supervisor determines whether the

use of force complied with BPD policy and whether additional training or policy changes are warranted. They further assert that if the supervisor has concerns about the use of force, the incident will be referred for additional review or an internal investigation. Plaintiffs dispute that BPD follows these protocols, arguing that the absence of a supervisor's name on many of Corporal Thibault's use of force reports indicates that his reports were not reviewed by a supervisor.

Defendants contend that prior to 2008, former Chief Schirling was not assigned to review any of Corporal Thibault's use of force reports. Plaintiffs counter that this is internally inconsistent with former Chief Schirling's affidavit in which he states that prior to 2008 he served as Deputy Chief of Administrative Services where he prepared annual reports on use of force.

Defendants describe fifty-nine use of force reports as "not an unusually high amount of incidents for an officer such as [Corporal] Thibault, who was in the patrol division for many years during which he was assigned to the downtown district for a period of years." *Id.* at 5. Plaintiffs dispute this conclusion and add that they do not have access to documentation of use of force reports for other officers during the same time period because Defendants objected to this request on grounds of relevancy.

Defendants contend that Corporal Thibault's performance and use of force was not raised or discussed during any of former Chief Schirling's daily, weekly, or monthly meetings with BPD Deputy Chiefs and supervisors during his tenure as Chief of Police. Because issues concerning Corporal Thibault's performance were not raised, former Chief Schirling states that he did not have "reason to be concerned about [Corporal] Thibault's use or force or response to non-emergency mental health calls." *Id.* at 6. Plaintiffs point out that two citizens filed a lawsuit against Corporal Thibault in state court on October 16, 2008, during the period that former Chief Schirling served as Chief of Police. Plaintiffs assert that "[i]t is not believable that, as Chief of Police during this time, Defendant Schirling would not have discussed either this lawsuit or the underlying incident in his daily, weekly, or monthly meetings with his supervisors." (Doc. 131-1 at 6.) Additionally, Plaintiffs argue that former Chief Schirling had actual knowledge of the

11

use of force reports submitted by Corporal Thibault prior to 2008 while he was serving as Deputy Chief because at that time he was in charge of reviewing use of force reports and compiling an annual report.

Although summary judgment is generally inappropriate when there are disputed issues of fact, in this case, not all disputed facts are material to each issue raised in Defendants' supplemental motion for summary judgment. The court therefore may properly adjudicate issues where disputed facts do not alter the outcome. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

### C. Whether Former Chief Schirling is Entitled to Qualified Immunity for Plaintiffs' Section 1983 Claim (Count III).

Defendants argue that former Chief Schirling is entitled to qualified immunity for Plaintiffs' Section 1983 claim because liability under Section 1983 is precluded unless both the underlying action of the subordinate and the actions of the supervisor violate clearly established law. They contend that because the court found that qualified immunity shielded Corporal Thibault from liability on Plaintiffs' excessive force claim in its 8/30/18 Decision, former Chief Schirling is also protected by qualified immunity. Plaintiffs do not contest Defendants' legal analysis, but instead argue that the court erred in finding that Corporal Thibault was entitled to qualified immunity.

"Defendants are entitled to qualified immunity on a supervisory liability claim unless the actions of the supervisor *and* the subordinate both violate clearly established law." *Grice v. McVeigh*, 873 F.3d 162, 169 (2d Cir. 2017). "[I]n order for a supervisor to be held liable under section 1983, both the law allegedly violated by the subordinate and the supervisory liability doctrine under which the plaintiff seeks to hold the supervisor liable must be clearly established." *Poe v. Leonard*, 282 F.3d 123, 126 (2d Cir. 2002).

Because the court found that Corporal Thibault's use of deadly force did not violate a "clearly established" right of which a reasonable person would have known,

former Chief Schirling is entitled to qualified immunity for Plaintiffs' supervisory liability claim under Section 1983 as a matter of law, and Count III against him must be DISMISSED. *Id.*

### D. Whether Former Chief Schirling is Entitled to Qualified Immunity for Plaintiffs' Negligence Claim (Count VI).

Defendants assert that former Chief Schirling is also entitled to qualified immunity with regard to Plaintiffs' negligence claim because "in order for former Chief Schirling to be liable, [Corporal] Thibault must have violated a constitutional right." (Doc. 127 at 13.) They further contend that "[b]ecause [Corporal] Thibault did not violate a clearly established right, former Chief Schirling is entitled to qualified immunity on all claims against him in this case." *Id.*

The precedent on which Defendants rely to support this argument pertains to supervisory liability claims under 42 U.S.C. § 1983 which require an underlying violation of federal law or a federal constitutional right. However, Plaintiffs' claim of negligence against former Chief Schirling as asserted in Count VI of the Complaint is based on Vermont law. Under Vermont law, qualified immunity depends on "the objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Murray v. White*, 587 A.2d 975, 980 (Vt. 1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Defendants do not cite any authority to support their contention that in order for former Chief Schirling to be held liable for negligent hiring and retention under Vermont law, Corporal Thibault must have violated a constitutional right. A party is liable for negligent supervision under Vermont law if:

> [H]e is negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving risk of harm to others: in the supervision of the activity; or . . . in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

*Haverly v. Kaytec, Inc.*, 738 A.2d 86, 91 (Vt. 1999) (quoting Restatement (Second) of Agency § 213 (1958)). The Vermont Supreme Court has also held:

13

> [T]he tort of negligent supervision must include as an element an underlying tort or wrongful act committed by the employee. A wrongful act may well be a tort, but not necessarily. If the act of the employee is contrary to a fundamental and well-defined public policy as evidenced by existing statutory law, it is sufficient to sustain the cause of action.

*Haverly*, 738 A.2d at 91.

This court dismissed Plaintiffs' claim of negligence against Corporal Thibault and Corporal Navari in the 8/30/18 Decision upon finding that both Corporals were entitled to qualified immunity under Vermont law. However, this determination does not necessarily mandate dismissal of the negligence claim against former Chief Schirling. The court did not determine whether Corporal Thibault or Corporal Navari had committed a "tort or wrongful act[,]" instead it found only that they acted in good faith in the scope of their employment.[6] Whether such a finding precludes the existence of a "tort or wrongful act" has not been briefed. Similarly, Defendants do not address whether former Chief Schirling was "negligent or reckless . . . in the employment of [an] improper person[] . . . in work involving risk of harm to others [or] in the supervision of the activity[.]" *Id.* (quoting Restatement (Second) of Agency § 213 (1958)). On this point, the material facts are disputed.

Defendants cite no controlling Vermont precedent governing negligent supervision, hiring, or retention, nor do they cite any precedent governing negligence generally. Against this backdrop, the court declines to decide whether former Chief Schirling is entitled to qualified immunity under Vermont law with regard to Plaintiffs' negligence claim. *See Jackson on Behalf of Z.J. v. City of Middletown*, 2017 WL 2218304, at *4 (D. Conn. May 19, 2017) ("Courts faced with qualified immunity claims should not be required sua sponte to conduct their own forensic reconstruction of the state

---

[6] The court stated "[b]ecause 'lower-level government employees are immune from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority[,]' Corporal Thibault and Corporal Navari are entitled to qualified immunity under Vermont law." *Brunette*, 2018 WL 4146598, at *37 (citing *Hudson v. Town of E. Montpelier*, 638 A.2d 561, 563 (Vt. 1993)).

of the law when confronted with a defendant's claim that the law was not clearly established at the time that he acted.").[7]

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' motion for reconsideration of the court's 8/30/18 Decision dismissing Count I of Plaintiffs' First Amended Complaint and DENIES Plaintiffs' motion to certify the granting of qualified immunity for interlocutory appeal. (Doc. 126.) The court DENIES Defendants' motion for reconsideration, and GRANTS IN PART AND DENIES IN PART Defendants' supplemental motion for summary judgment. (Doc. 127.) Summary judgment is GRANTED on Count III with regard to former Chief Schirling. Summary judgment is DENIED WITHOUT PREJUDICE with regard to Count VI against former Chief Schirling.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 2nd day of January, 2019.

Christina Reiss, District Judge
United States District Court

---

[7] *See also Perkins v. Teele*, 2018 WL 3541864, at *4 (D. Conn. July 23, 2018) (declining to grant summary judgment based on a qualified immunity defense that was "inadequately briefed by the defendants"); *Jimmo v. Sebelius*, 2011 WL 5104355, at *22 (D. Vt. Oct. 25, 2011) (declining to address alleged grounds for dismissal due to "the complexity of the legal issues, the parties' cursory treatment of the issues, and the current stage of the litigation[.]") (internal quotation marks omitted) (citing *Ibarra v. City of Chicago*, 2011 WL 4583785, at *8 (N.D. Ill. Sept. 28, 2011)).